IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. GROOMS<br><br>Defendant. | Case No. 22 CR 128<br><br>Magistrate Judge Sunil R. Harjani |

### MEMORANDUM OPINION AND ORDER

Currently before the Court is the government's motion to detain Defendant John Grooms pending trial in this district pursuant to 18 U.S.C. § 3142(e). After considering the evidence presented at the detention hearing and the factors identified in 18 U.S.C. § 3142(g), the Court now rules that the government's motion for detention as to a risk of danger to the community is granted, but the motion is denied on the basis of non-appearance. As a result, Defendant Grooms will be detained in the custody of the United States Marshals Service pending further proceedings.

### BACKGROUND

Defendant Grooms stands accused of multiple acts of child pornography and child exploitation. Specifically, on March 8, 2022, Grooms was indicted by a grand jury charging him with one count of enticement, in violation of 18 U.S.C. § 2422(b), two counts of production of child pornography, in violation of 18 U.S.C. § 2251(A), one count of travel with intent to engage in criminal sexual activity with a minor, in violation of 18 U.S.C. § 2423(B), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Grooms was arraigned and entered a plea of not guilty on March 9, 2022. Doc. 6. In accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3141(f)(1)(E), and without objection, the Court held a detention hearing over two days in this case to determine whether there are any conditions of release that

will reasonably assure the safety of any other person and the community as well as the appearance of the defendant. In particular, certain complexities in this case necessitated a more involved detention hearing. First, while the Pretrial Services Office recommended detention, Grooms had no criminal history, had current employment, significant times to the community, and family willing to supervise him on pretrial release conditions. Thus, the case for detention was not immediately apparent from the face of the Pretrial Services Report. Indeed, the government's argument in support of detention was primarily based on an oral proffer by the prosecutor about the evidence obtained during the investigation that, in its view, demonstrated danger and risk of flight. As a result, the Court asked the government to present a witness so it could receive sworn testimony, subject to cross-examination, about this evidence. *See United States v. Russell*, No. 19 CR 641, 2021 WL 5447037 (N.D. Ill Nov. 22, 2021). On March 17, 2022, Special Agent Edward Augustus Goodman testified about the government's investigation and the evidence collected concerning the alleged criminal activity, and he was subject to cross-examination by Grooms's counsel at that time. The Court also ordered briefing as to the detention issue following the hearing, particularly since Grooms retained new counsel as of March 25, 2022. The government submitted its brief in support of detention on April 9, 2022; Grooms was provided until April 16, 2022 to file a response but did not submit any briefing to the Court. The second complexity in this case is that Grooms suffers from cerebral palsy, uses a motorized wheelchair, has almost no mobility of his lower body, and needs assistance with numerous daily living activities. Accordingly, the Court has sought and received information from the U.S. Marshals Service since Grooms's arrest about its ability to care for Grooms in a detention facility if the Court found detention was warranted.

**DISCUSSION**

As a general matter, detention pending trial is warranted only if a court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. § 3142(e)(1); *United States v. Portes*, 786 F.2d 758, 760 (7th Cir. 1985); *United States v. Wilks,* 15 F.4th 842, 846 (7th Cir. 2021). Furthermore, in assessing a defendant's risk of flight, the government bears the burden of proof to demonstrate flight by a preponderance of the evidence. *See Portes,* 786 F.2d at 765. In considering whether a defendant poses a threat of danger to the community, the government bears the burden of proof by clear and convincing evidence. 18 U.S.C. §3142(f)(2)(B); *see United States v. Salerno,* 481 U.S. 739, 751 (1987). To determine if Grooms is a risk of flight and/or a danger to the community, the Court considers: (1) the nature and circumstances of the offenses with which Grooms is charged; (2) the weight of the evidence against Grooms; (3) Grooms's history and characteristics; and (4) the nature and seriousness of the danger Grooms poses to the community by his release. 18 U.S.C. § 3142(g). Grooms retains a presumption of innocence and the Court's evaluation of these factors do not in any way modify or limit this presumption. 18 U.S.C. § 3142(j).

A. **The Presumption of Detention**

In this case, the Bail Reform Act contains a presumption that there are no conditions of release that will reasonably assure the appearance of the defendant and the safety of the community. This is because defendant has been charged with committing offenses involving a minor victim under 18 U.S.C. §§ 2422, 2251, and 2252A. *See* 18 U.S.C. § 3142(e)(3)(E). The presumption shifts the burden of production, but not the burden of persuasion to the Defendant. *Portes*, 786 F.2d at 764. Here, the Court finds that Grooms has sufficiently rebutted the presumption of detention as to risk of flight. Grooms has no criminal history, strong ties to the community, family support, and no pattern of past non-appearances, as further detailed in the

Pretrial Services Report, and this evidence is sufficient to meet that burden of production. However, as further described below, Grooms has not rebutted the presumption with evidence concerning the enormous danger to the community that he poses if he is released. In particular, Defendant has not offered evidence or even filed a response brief to meet his burden of production that he is not a danger to the community. Thus, the Court finds Grooms has not carried his burden of production and the presumption applies in this case. Alternatively, as further detailed below, even if the presumption was rebutted, detention is still warranted under the Section 3142(g) factors. The presumption also does not disappear, even if found rebutted, and continues to factor into the Section 3142(g) analysis. *Id*.

  **B.**  **Nature and Circumstances of the Offense**

  To call the nature and circumstances of the offense serious in this case is a gross understatement. The charges here involve Grooms's possession and manufacturing of child pornography, together with the enticement of minors and engagement in sexual activity with minors over a period of several years. In summary, on March 17, 2022, Special Agent Goodman testified at the detention hearing to the following evidence:

- **Possession of Child Pornography**: During a search of Grooms's residence on March 10, 2021, agents discovered an encrypted USB drive in password-protected safe. Agents also seized a desktop computer and iPhone. All of these devices contained images and videos of child pornography, including images of victims known to the National Center for Missing and Exploited Children (NCMEC) and as young as two or three years old. (Tr. 37-42; 46-48).

- **Destruction of Evidence:** A few hours after the search of Grooms's residence, agents discovered that approximately 2,000 files containing child pornography had been deleted from Groom's online Kik account from a location identified as Grooms's tax business office. The files included dozens of folders containing the names of various minors who had been identified by law enforcement as victims. (Tr. 41-47).

- **Online Contact and Production of Child Pornography:** In January 2020, after receiving information from NCMEC, Illinois State Police investigators interviewed Grooms and he had admitted participating in Facebook messenger communications with a 17-year old

female from Australia. Grooms admitted that he had received a video depicting the 17-year old's vagina and that he had offered her a place to stay in the United States. (Tr. 13-15). In addition, in 2019, law enforcement agents determined that Grooms communicated with Minor B through Facetime almost every night for a period of six months. Their communications included phone sex and demands by Grooms that Minor B be nude or masturbate on Facetime. Grooms also demanded and received nude images from Minor B pursuant to his instructions on specific poses. Through the communications, Grooms also "punished" Minor B when she purportedly did things without his permission, such as making her insert a marker into her anus. This image was recovered during the search of Grooms's residence. (Tr. 48-52).

- **Transmission of Child Pornography**: Agents' examination of Grooms's online Kik account on his phone found that he negotiated and traded images of child pornography with other Kik users. (Tr. 45). Grooms also communicated with an undercover agent, after the government was notified by Minor A's parents about the communications. While posing as Minor A, agents engaged in a chat with Grooms. During these chats, Grooms confirmed that he knew Minor A was 15-years old, that he was interested in a sexual relationship with her, and he offered to pick her up from Nebraska. Grooms also sent sexually explicit photos and videos of himself and requested that Minor A send the same. (Tr. 22-32).

- **Physical Contact with Minor:** Grooms met Minor C online and communicated with her via Kik chats and Skype. Grooms solicited nude photos from Minor C and received nude photos of her breasts and vagina. Around May 11, 2020, Grooms also paid a friend to drive him to Ohio, picked up Minor C, and brought her back to his residence. Minor C stayed with Grooms for several days until local law enforcement was called by a neighbor, who witnessed Minor C nude in bed. Minor C reported that Grooms touched her vagina on two occasions and solicited oral sex from her. (Tr. 15-22). Special Agent Goodman also testified that Grooms had sexual contact with a 15-year old minor near a school in 2014. (Tr. 53).

The evidence conclusively demonstrates that the nature and circumstances of the offense is one that involves significant harm to the community, including to minors. The crimes here involve creation, transmission and possession of vast amounts of child pornography, mental and physical abuse of children, the exploitation of children for sexual gratification, and interstate travel to solicit and obtain sexual encounters with minors. Grooms's alleged conduct runs the gamut of the most reprehensible criminal conduct that can be inflicted on minor victims. While the Court recognizes that Grooms maintains a presumption of innocence until proven guilty, the evidence adduced during the hearing, which the Court can and must consider, demonstrates that the nature of the charges and the circumstances of the offense allegedly committed by Grooms is one that poses a

5

grave and significant danger to the community and the minor victims. This risk involves Grooms continuing his conduct on pretrial release in soliciting, receiving, and transmitting child pornography and continuing to interact with the victims and potentially other minors. Thus, this factor weighs heavily in favor of detention. With respect to flight risk, the nature of the charge is also one that carries a potentially hefty prison sentence, if convicted. For example, the statutory minimum term of imprisonment on Counts Two and Three is 15 years' imprisonment. *See* 18 U.S.C. §2251(e). A defendant facing this level of imprisonment, if convicted, can certainly have a heightened desire to flee prosecution. Thus, there is some risk of flight posed by the nature of the offense, but without more, this fact is insufficient alone to conclude that no conditions could prevent flight.

    **C.    Weight of the Evidence**

The weight of the evidence also weighs in favor of detention. The Court generally provides this factor less significance given the presumption of innocence afforded to a defendant. Nevertheless, Section 3142(g) permits the Court to consider the weight of the evidence as it pertains to flight risk and danger to the community. The evidence here consists of victim statements, text messages, recorded conversations, undercover agent communications with Grooms, Grooms's own statements, as well as scores of child pornography photos and videos contained in multiple electronic media belonging to Grooms and online accounts attributable to Grooms. All of this evidence demonstrates that the weight of the evidence is strong and demonstrates that his release poses a risk of danger to the community. The weight of the evidence also supports some risk of flight given the substantial evidence gathered against him and the potential sentence he faces if convicted.

### D. History and Characteristics of the Defendant

As mentioned above, Grooms has no criminal history. He is a 40-year old male, a life-long resident of Illinois, and has family in the area, including his mother and one minor aged daughter (who resides with his mother). Grooms does not have a U.S. Passport and has never traveled outside the United States. Grooms has no record of non-appearance in court proceedings and no known history of drug or alcohol abuse. He was not on probation or parole at the time of the offense. Grooms is also self-employed as the owner of a tax preparer business. Grooms has cerebral palsy and is confined to a special motorized wheelchair, which was brought to Court as a demonstrative. *See* Def. Ex. 2. He has a special van that fits his wheelchair that he can drive. His home also has the medical equipment necessary to allow him to engage in daily living activities, such as moving into the bed or using the bathroom, as reflected in certain photographs provided by Grooms at the detention hearing. Def. Ex. 1-3. All of these factors, as identified in Section 3142(g)(3)(A)-(B), are characteristics of a person who generally does not flee prosecution. Thus, it weighs in favor of a finding that there is a low-risk of flight and one that can be mitigated with certain release conditions imposed by the Court. Specifically, conditions such as home incarceration, electronic monitoring and a third-party custodian can mitigate the risk of flight, all of which Grooms' former counsel proposed at the detention hearing.[1] The above characteristics also have some applicability to the risk of danger that Grooms's poses to the community if released. However, the Court has significant concern as to whether the proposed conditions can actually mitigate the risk of danger here. Notably, Grooms was allegedly perfectly capable of traveling to Ohio and back with a minor victim despite his disability. He was also allegedly resourceful in using multiple devices and multiple applications to possess, create, and transmit

---

[1] Grooms' counsel also offered several pieces of property as security for a bond, but the government noted that they were unsuitable as a result of various IRS liens on the properties.

child pornography, and destroy evidence to cover it up, despite having this disability. Imposing conditions of release, such as no use of the internet or internet-capable devices, certainly has some appeal, but they are in reality notoriously difficult to enforce. Pretrial Services has no ability to monitor this condition. A third-party custodian, such as his mother might be able to assist, but then again, Grooms purportedly engaged in this conduct right under his mother's nose, as she visited him regularly to help with daily living activities and was aware of his trip to Ohio. *See* Govt. Ex. 6. Access to the internet is also extremely easy – most TVs are internet-capable (and he has one according to Pretrial Services) and free Wi-Fi is often available from areas surrounding a home even if a home's internet subscription is discontinued. While in some circumstances where the risk factors are lower, these internet-restricted conditions may be appropriate. Here, Grooms's alleged criminal activity is so extensive and his persistence in continuing the conduct so intense that the Court finds that these conditions cannot mitigate the risk of danger his release poses to the community.

      **E.**      **Nature and Seriousness of the Danger to Any Person or the Community**

In addition to the evidence identified above, there are other characteristics of the offense that demonstrates a heighted danger to the community, and the minor victims, posed by Grooms's release. Grooms has had multiple encounters with law enforcement, but those events did not deter his activity. For example, in 2020, after Grooms was found with Minor C by local law enforcement, Grooms continued to reach out to her for nude photos on the Kik application. Minor C then sent nude photos to Grooms, and Minor C reported that Grooms used her as a model to produce child pornography. Grooms's residence was searched pursuant to a search warrant in early 2021, but the government presented evidence that he used a new phone number and Snapchat account to communicate with one of the minor victims. (Tr. 54-55). Thus, the evidence shows that he has been relentless in communicating with minors despite law enforcement investigation into

8

his conduct. Grooms is also resourceful in hiding his alleged criminal activity, such as using encrypted devices, password-protected safes, and destroying evidence when caught. Grooms also had a substantial number of firearms at his home. During the search, and recognizing that he has a FOID card, agents found four weapons at his home – a loaded Glock pistol; a loaded assault rifle; a long gun; and a .45 caliber handgun, as well as ammunition in his bedroom. (Tr. 53-54). Thus, besides the alleged conduct identified above, the evidence presented by Special Agent Goodman established that there are particular characteristics of this offense that enhance the danger posed to the community by releasing Grooms.

### F.     Other considerations

In light of defendant's disability, the Court provided time for all parties to propose options for detention or release. The Court received several reports from the United States Marshals Office about its ability to care for Defendant while he is detained. At this time, the Court understands that Defendant is at a hospital awaiting placement at a pretrial detention institution. The United States Marshals Office also went to great lengths in an attempt to secure space at either Livingston County or Winnebago County detention facilities and with the requisite equipment and nursing needs for Grooms. The Court received regular reports about its progress in working with these facilities. Prior counsel for Defendant also attempted to secure space at an assisted living facility, as an alternative option, that would have significant restrictions on Grooms's movement and access to internet-capable devices. Ultimately, all of those efforts were unsuccessful. At this time, according to the United States Marshals Service, it is likely that Grooms will be detained at an out-of-state facility that can meet his medical needs. The Court is cognizant that detention here poses a more significant burden on Defendant's ability to prepare his case for trial with his counsel, as well as causes impediments to his access to in-person court hearings and to visit with his family. The Court is also sensitive that such detention comes at a significant financial cost to the

government. Nevertheless, it is equally important to recognize that Section 3142(g) does not permit the Court to account for these circumstances, and that Defendant's medical needs are relevant only as they apply to whether Defendant poses a risk of flight or a danger to the community. Simply having a disability, or other special medical needs, does not change the analysis that the Court must employ under the Bail Reform Act. The Court's duty is to determine whether there are any release conditions that can ensure the safety of minors and the community, and if the danger is so great under the Section 3142(g) factors that no conditions can mitigate this danger, as in here, the answer is pretrial detention under the Bail Reform Act. Thus, while the Court provided the United States Marshals Office with time to propose options in an attempt to address the unique burdens identified with detention in this case, the lack of success in finding a suitable facility in Illinois does not change the Court's conclusion that detention is still warranted under the Section 3142(g) factors. This is especially true in a case where the Court must also apply Congress's directive that this particular crime is worthy of detention through the application of the presumption directly and also within the consideration of the Section 3142(g) factors. Finally, the United States Marshals Office has represented that the out-of-state facility can meet and satisfy Grooms' medical needs once he is transported to that location.

## CONCLUSION

For the above reasons, as to risk of danger, the Court finds that the presumption of detention applies, and even if it did not, the government has demonstrated by clear and convincing evidence that there are no conditions of release for Grooms that can reasonably assure the safety of the community. Although not outcome determinative, the Court finds the presumption rebutted on the basis of flight risk, and the government has not met its burden by a preponderance of the evidence to demonstrate that no conditions can ensure Grooms's appearance for court proceedings.

Accordingly, the Court orders the Defendant remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding. The government's motion for pretrial detention pursuant to 18 U.S.C. § 3142(e) is granted.

**SO ORDERED.**

Dated: April 22, 2022

Sunil R. Harjani
United States Magistrate Judge